IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KAREN GEARHART,

        Plaintiff,

   vs.                                2:07-CV-1444-LKK/GGH

SOLANO COUNTY, et al.,

        Defendants.            ORDER

_____/

Previously pending on this court's law and motion calendar for June 19, 2008, was plaintiffs' motion to compel production of documents.  Michael Green appeared for plaintiffs. Kathleen Williams appeared for defendants.  After reviewing the joint statements and hearing oral argument, the court now issues the following order.

BACKGROUND

According to the complaint, on July 19, 2006, defendants Solano County Sheriff's officers Adams, Arabia, Dudley and Hipol conducted a search of plaintiff's home pursuant to a warrantless parole search of Ralph Nash, a parolee living with plaintiff at the time.[1]  Plaintiff returned home near the end of the search, to find that her home was "substantially tossed."  In addition to various claims of destruction as a result of the search, one of plaintiff's claims and a

---

[1]  There was also a search of plaintiff's home on June 8, 2006.

1

1   primary issue is whether the officers tore open a bag containing the ashes of plaintiff's deceased

2   husband and spilled it about.  Defendants deny that they spread or spilled ashes.  It is undisputed

3   that the only defendants who saw the ashes on the day of the search were John Arabia and Ray

4   Dudley.  Plaintiff alleges violations pursuant to 42 U.S.C. § 1983 (unreasonable and unlawful

5   search and seizure), negligence, negligent infliction of emotional distress, and intentional

6   infliction of emotional distress against the individual defendants.  Claims against Solano County

7   are under 42 U.S.C. § 1983 (ratifying, condoning and encouraging the conduct of the individual

8   defendants), custom, policy and practice of unreasonable searches and intimidation under

9   Monell, and negligent hiring, training and supervision of the officers.

10          The instant dispute concerns defendants' failure to produce documents requested

11  by plaintiffs under various claims of privilege, including the official information privilege, Cal.

12  Evid. Code §§ 1040, 1043, and 1045, and Cal. Penal Code § 832.7.

13  DISCUSSION

14          I.  Applicability of Federal Law to Claims of Privilege

15          Federal law applies to privilege based discovery disputes involving federal claims,

16  even if allied with by pendent state law claims.  See, e.g., Pagano v. Oroville Hospital, 145

17  F.R.D. 683, 687 (E.D.Cal. 1993); Martinez v. City of Stockton, 132 F.R.D. 677, 681-83

18  (E.D.Cal. 1990).  Privileges are narrowly construed, because they impede the full and fair

19  discovery of the truth.  Eureka Financial Corp. v. Hartford Acc. and Indemnity Co., 136 F.R.D.

20  179, 183 (E.D. Cal. 1991).  Further, the party asserting a privilege has the burden to establish that

21  it applies.  See, e.g., United States v. O'Neill, 619 F.2d 222, 227 (3rd Cir. 1980).

22          The Supreme Court has reemphasized that privileges are not favored:

23          The common-law principles underlying the recognition of
            testimonial privileges can be stated simply.  "'For more than three
24          centuries it has now been recognized as a fundamental maxim that
            the public . . . has a right to every man's evidence.  When we come
25          to examine the various claims of exemption, we start with the
            primary assumption that there is a general duty to give what
26          testimony one is capable of giving, and that any exemptions which

1    may exist are distinctly exceptional, being so many derogations
      from a positive general rule.'"

2

3   Jaffee v. Redmond, 518 U.S. 1, 9, 116 S. Ct. 1923, 1927 (1996) (citing United States v. Bryan,

4   339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence §

5   2192, p. 64 (3d ed.1940)); see also Maricopa Audubon Soc. v. U.S.F.S., 108 F.3d 1082, 1085-86

6   (9th Cir. 1997).

7           In cases presenting 42 U.S.C. § 1983 civil rights claims concurrently with state

8   law claims, courts disagree about the extent to which state privilege law remains applicable in

9   discovery disputes. The Supreme Court explicitly noted in Jaffee that the issue is unsettled.

10  Jaffe, 518 U.S. at 15 n.15, 116 S. Ct. at 1931 n.15 (noting disagreement concerning the proper

11  rule in cases in which both federal and state claims are asserted in federal court.)  This court has

12  found that in mixed federal and state claim cases, although federal law is ultimately binding, state

13  privilege law which is consistent with its federal equivalent significantly assists in applying

14  privilege law to discovery disputes.  See Pagano; Martinez; Cook v. Yellow Freight, 132 F.R.D.

15  548 (E.D. Cal. 1990).  Other courts, however, disagree.  See, e.g., Jackson v. County of

16  Sacramento, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (stating that Pagano/Martinez/Cook have

17  been overruled);[2]

18  \\\\\

19

_____

20        [2] Jackson is, respectfully, simply wrong in its proposition that Jaffe overruled Pagano,
    Martinez, and Cook.  For starters, the cases were not referenced by Jaffe.  More importantly,
21  Jaffe itself expressly noted the disagreement on the extent to which federal privilege law was
    informed by its state law counterpart, and expressly held that it would not rule on the issue.  "We
22  note that there is disagreement concerning the proper rule in cases such as this in which both
    federal and state claims are asserted in federal court and relevant evidence would be privileged
23  under state law but not under federal law....we express no opinion on the matter."  Jaffe, 518 U.S.
    at 15 (n.15), 116 S. Ct. at 1931.  Jackson is based on the questionable premise that the Supreme
24  Court's determination not to consider an issue impliedly overrules cases discussing the issue.
    The cases that have followed Jackson's erroneous interpretation of Jaffe, seemingly without
25  reference to footnote 15 in Jaffe, are likewise flawed in this respect.  See Folb v. Motion Picture
    Indus. Etc., 16 F. Supp. 2d 1164 (C.D. Cal. 1998); Humphreys v. Regents of University of Cal.,
26  2006 WL 335275 (N.D. Cal. 2006).

1    This court considers state law in mixed federal/state claims.  See Pagano.  While

2    federal law is controlling, id. at 687, state law is nevertheless relevant, especially in mixed claims

3    where one of the elements of the federal claim is that a *state* actor was acting under color of *state*

4    law when the federal right was violated – a category which includes every 42 U.S.C. § 1983

5    action.[3]  It has been the policy of this court, "when state privilege law is consistent, or at least

6    compatible, with federal privilege law," to read the two together "in order to accommodate the

7    legitimate expectations of the state's citizens."  Id. at 688; accord Martinez, 132 F.R.D. at 681

8    ("application of state rules [is appropriate] when that application would not be inconsistent with

9    federal law"); but see Folb v. Motion Picture Industry Pension & Health Plans, 16 F. Supp.2d

10   1164, 1170 (C.D. Cal., 1998) (refusing to consider state privilege law); Jackson, 175 F.R.D. 653,

11   654 (E.D. Cal. 1997) (same).  Several reasons justify this policy.  First, as previously noted, the

12   Supreme Court explicitly noted in Jaffe that the matter is unsettled.

13   Second, not only this court, but others as well, use state law to assist in defining

14   the parameters of federal privilege.  See, e.g., Memorial Hospital etc. v. Shadur, 664 F.2d 1058,

15   1061 (7th Cir. 1981); Hysell v. Pliler, 2007 WL 273882 *1 (E.D. Cal. 2007); Gottleib v. Wiles,

16   143 F.R.D. 235, 237 (D.Colo. 1992); Wei v. Bodner, 127 F.R.D. 91, 94-95 (D.N.J. 1989); Unger

17   v. Cohen, 125 F.R.D. 67, 69 (S.D.N.Y. 1989); Lora v. Board of Education, 74 F.R.D. 565

18   (E.D.N.Y. 1977).

19   Third, federal courts frequently look to state law for guidance in § 1983 lawsuits.

20   Indeed, the Supreme Court has recognized:

21   In 42 U.S.C. § 1988, Congress 'quite clearly instructs [federal
     courts] to refer to state statutes' when federal law provides no rule
22   of decision for actions brought under § 1983 . . . . [B]y its terms,
     §1988 authorizes federal courts to disregard an otherwise
23   applicable state rule of law only if the state law is 'inconsistent
     with the Constitution and laws of the United States.'

24

25       [3]   Those who interpret the trilogy of Pagano, Martinez, and Cook as standing for the
     proposition that state privilege law is ultimately controlling in mixed claim situations have
26   misread the cases.

1  Board of Regents, etc v. Tomanio, 446 U.S. 478, 484-85, 100 S. Ct. 1790, 1795 (1980) (citations

2  omitted).

3          Further, the Court has acknowledged:

4          This statutory reliance on state law obviously means that there will
           not be nation-wide uniformity on these issues [contemplated by
5          §1988].

6  Robertson v. Wegmann, 436 U.S. 584, 594 (n.11), 98 S. Ct. 1991, 1997 (1978).  See also Moor

7  v. County of Alameda, 411 U.S. 693, 701-702, 93 S. Ct. 1785, 1791-1792 (1973) (§ 1988 does

8  not permit wholesale incorporation of state causes of action, but state law may supplement

9  established federal law).  The preceding Supreme Court cases, while not directly on-point with

10 the privilege issues presented by this discovery motion, nevertheless stand as strong authority for

11 the principle that application of state law is not foreign to § 1983 jurisprudence.  Lower court

12 cases such as Kelly, concluding "[i]t would make no sense to permit state law to determine what

13 evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to

14 protect citizens from abuses of power by state and local authorities," Kelly v. City of San Jose,

15 114 F.R.D. 653, 656 (N.D. Cal. 1987), assuming such cases advocate no role for state law, fail to

16 consider congressional intent that state law play an important, and at times dispositive, role in §

17 1983 litigation.[4]

18          Fourth, recognition of important state interests which do not conflict with federal

19 law is a bedrock principle of our federal system.  "Consideration under the Supremacy Clause

20 starts with the basic assumption that Congress did not intend to displace state laws."  Maryland v.

21 Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128 (1981) (preemption case).  While it is at

22 times necessary to flex the federal muscle when federal and state law conflict, such flexing

23 should be done only as a last resort.  While preemption is not the issue here, there is no reason to

24

25          [4] While the notion of national uniformity in federal practice, assuming that such is possible, is a worthy goal for which to strive in the usual situation, Congress was less concerned with national uniformity in setting up the civil rights statutory provisions of § 1981 et seq. than it
26 was with the usurpation of state law where such was not necessary.

1    ignore basic principles of federalism in applying privilege law.

2              Finally, this entire action, including the federal § 1983 claim, could have been

3    brought in state court.[5]  The state court would apply state privilege law.  In addition, in a federal

4    court civil rights case in which the federal claims drop out, it is not beyond the pale to have a

5    case in which supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, is exercised over only

6    state claims.  In such cases, only state privileges seemingly would apply.  Thus, in mixed claim

7    cases where federal and state privileges are consistent, federal cases which fail to consider state

8    privilege law run an unnecessary risk of creating ad hoc, or varyingly stated, privilege standards,

9    depending on whether the lawsuit is brought in state or federal court, or whether federal claims

10   ultimately survive.[6]

11             The inevitable question is – if the state and federal privileges at issue are

12   consistent, why not simply apply federal privilege law?  As discussed in Pagano, the point of

13   considering state law as a guide is not to determine whether a specific privilege exists, but to

14   determine how to perform the "balancing" that most privilege determinations, state or federal,

15   require.  Judges frequently are tempted to create multi-pronged tests for deciding federal

16   common law privilege issues, born from individual creativity (and sometimes from the myopia of

17   having considered the issues in particular cases).  In contrast, similar state privileges frequently

18   are codified privileges which have received the attention and consideration of the peoples'

19   representatives in the respective legislatures, including competing considerations of any

20   balancing applicable to those privileges.  In terms of setting policy, the wisdom of the collective

21   legislature is generally greater than the wisdom of particular judges.  Our system of government

22

23        [5]  Federal courts have original, but not exclusive, jurisdiction over § 1983 claims pursuant to 28 U.S.C. § 1343; thus, state courts are fully authorized to hear §1983 claims.  Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980).

24

25        [6] Cf. Menses v. U.S. Postal Service, 942 F. Supp. 1320, 1322 (D. Nev. 1996) (since Federal Tort Claims Act cases can be brought only in federal court, there is a need for national uniformity in rules of evidence, and no corresponding need to apply state privilege law even

26   though the substance of the claims is decided by reference to the state law).

1   is based on this premise.  Moreover, the standards set forth by the legislature are generally more

2   structured and more specific, and therefore provide a uniform starting point for any analysis.

3   Therefore, it makes little sense to avoid using as a guidepost, standards the legislature has already

4   provided.

5            For all of the above reasons, in deciding whether privilege should preclude

6   disclosure of documents in a civil rights case, this court will continue to consider applicable state

7   statutes establishing policy and criteria for disclosure.  Jackson, supra and its progeny are

8   incorrect in their premise that the undersigned's cases have been overruled, and respectfully,

9   incorrect in their substance.

10          II.  Governmental Privileges

11           The federal privilege applicable to the government interest in preserving

12   confidentiality of law enforcement records has various names: (1) the "official information

13   privilege," Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1991) (employment

14   discrimination case which raised only federal claims); (2) the "law enforcement privilege," In re

15   Department of Investigation of City of New York, 856 F.2d 481, 483-84 (2d Cir. 1988) (applying

16   privilege to protect investigative agency with dual criminal and civil functions); Morrissey v.

17   City of New York, 171 F.R.D. 85, 90 (S.D.N.Y. 1997) (finding, with guidance from state law

18   enforcement privilege, that law enforcement privilege is somewhat narrower than official

19   information privilege); and (3) a type of "executive privilege," Siegfried v. City of Easton, 146

20   F.R.D. 98, 101 (E.D. Pa. 1992).  The federal privileges are based on the following rationale:

21              The purpose of this privilege is to prevent disclosure of law
               enforcement techniques and procedures, to preserve the
22              confidentiality of sources, to protect witness and law enforcement
               personnel, to safeguard the privacy of individuals involved in an
23              investigation, and otherwise to prevent interference with an
               investigation.
24

25   In re Dept. of Investigation, 856 F.2d at 484.

26   \\\\\

1      This federal "qualified" governmental privilege is consistent with California

2  statutes according a qualified privilege to peace officer personnel records.[7]  Cal. Penal Code §

3  832.7.[8]  Disclosure requires "good cause" (Cal. Evid. Code §1043),[9] relevance, and unavailability

4  by other means (Cal. Evid. Code §1045). [10]

5

6      [7] Defendants cite in part Cal. Evid. Code § 1040 regarding the official information privilege; however, the discussion will focus on the federal counterpart and more pertinent state statutes.

7

8      [8] Cal. Penal Code § 832.7 provides in part:

9      (a)  Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.

10

11      [9] Cal. Evidence Code § 1043 provides in part:

12      (a)      In any case in which discovery or disclosure is sought of peace custodial officer personnel records . . . the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body. . .

13      (b)      The motion shall include . . . (3) Affidavits showing good cause for the discovery or disclosure sought ...

14

15  Cal. Evid. Code § 1046 requires the party alleging excessive force who seeks disclosure to include a copy of the police report setting forth the circumstances under which the party was stopped and arrested.  Such procedural nuances of asserting privilege in state court, including who must assert the privilege, how it must be asserted, or who bears the burden of establishing the privilege or its exception do not concern the court.  Rather, the substantive disclosure criteria and the strength of the state's interest in preventing disclosure, as demonstrated by the statutes, are the matters of concern.

16

17

18

19      [10] Cal. Evid. Code § 1045 provides:
           (a) Nothing in this article shall be construed to affect the right of access to *records of complaints, or investigations of complaints,* or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer or custodial officer ... participated, or which he or she perceived, and *pertaining to the manner in which he or she performed his or her duties, provided that information is relevant* to the subject matter involved in the pending litigation.

20

21

22

23

24

25      (b) In determining relevance the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure:

26

8

1          The California statutes codifying the governmental privilege balance the need for

2   disclosure with the government's legitimate need to acquire and maintain confidential

3   information for sensitive activities.  See County of Los Angeles v. Superior Court, 18 Cal. App.

4   4th 588, 22 Cal. Rptr. 2d 409 (1993); People v. Superior Court for County of Sacramento, 19

5   Cal. App. 3d 522, 97 Cal. Rptr. 118 (1971).  As these cases demonstrate, the California

6   Legislature understood quite well the need for some secrecy in government affairs, and was

7   aware that permitting unrestricted disclosure might chill the ability of government officials to

8   obtain candid, confidential information from persons otherwise reluctant to become involved or

9   influenced by interests of self-preservation.  It is critical to note that Cal. Evid. Code § 1045

10  strikes the state balance in favor of disclosing internal investigations pertaining to the manner in

11  which a peace officer performed his or her duties, *so long as they are relevant* to pending

12

13          (1) Information consisting of complaints concerning conduct
            occurring more than five years before the event or transaction that
            is the subject of the litigation in aid of which discovery or
14          disclosure is sought.

15           (2) In any criminal proceeding the conclusions of any officer
            investigating a complaint filed pursuant to Section 832.5 of the
16          Penal Code.

17          (3) Facts sought to be disclosed which are so remote as to make
            disclosure of little or no practical benefit.
18
            (c) In determining relevance where the issue in litigation concerns
19          the policies or pattern of conduct of the employing agency, the
            court shall consider whether the information sought may be
20          obtained from other records maintained by the employing agency
            in the regular course of agency business which would not
21          necessitate the disclosure of individual personnel records.
    (emphasis added.)
22
            The undersigned has found the proviso of § 1045 that information will be deemed
23  per se irrelevant if it includes "complaints concerning conduct occurring more than five years
    before the event or transaction which is the subject of the litigation," too rigid to comport with
24  federal law, in which "remoteness" is a matter generally weighed in determining the relevance of
    particular information.  "[T]he overall balancing provisions contained within [Fed. R. Civ. P.]
25  26(b) [dictate that] . . . [t]he court must carefully assess the request for discovery in light of . . .
    the remoteness of sought discovery to the issues in the case."  Martinez, 132 F.R.D. at 682.  That
26  analysis is confirmed.

1 litigation.  Accordingly, relevance is the dispositive factor in directing disclosure of internal

2 affairs investigations.[11]

3         III.  Analysis

4             Three categories of documents sought are the internal investigation report of both

5 the June and July, 2006 searches, the personnel files of the four officers, and citizen complaints

6 against the officers.  At hearing, defendants submitted documents from the internal affairs

7 investigation for *in camera* review.

8 Number 1 -  Complete Internal Investigation Report (June 8 and July, 2006 searches)

9             Defendants already produced the entire report except for four pages which they

10 redacted, and have now produced those pages in unredacted form to the court for *in camera*

11 review.  Those four pages refer to David Adams and John Arabia's personnel and/or other

12 Internal Affairs files.  The court has now reviewed those four pages and determines that they are

13 not relevant to the matters at issue in this case.  Plaintiff's motion to compel is denied in regard

14 to this request.

15             The parties reference a stipulated protective order which they attach as Exhibit B

16 to their joint statement.  Should the remainder of the IA report already produced be filed under

17 seal with this court, the parties may submit a stipulated protective order; however, it must contain

18 procedures to require a showing of good cause for filing the documents under seal.  See San Jose

19 Mercury News, Inc. v. United States Dist. Ct., 187 F.3d 1096, 1103 (9th Cir.1999).  This court

20 will not approve a protective order giving blanket authority to the parties to designate what shall

21 be filed under seal.

22 \\\\\

23 \\\\\

24

25         [11]  Internal affairs investigations are "investigations of complaints" covered by Cal. Evid.
Code § 1045.  See City of Fresno v. Superior Court, 205 Cal. App. 3d 1459, 253 Cal. Rptr. 296
26 (1988).

1    Numbers 4-7 - Personnel Files of Officers Dudley, Arabia, Adams and Hipol

2            Plaintiff has not articulated a good reason why these files should be produced.

3    Nevertheless, to the extent that these files contain information regarding improper searches by

4    the defendant officers, defendants shall produce the documentation in the files which pertain to

5    this subject only.  Plaintiff's request is denied in all other respects.  Any such documents may be

6    produced pursuant to a stipulated protective order.

7    Number 8 - Citizen Complaints Against Officers Dudley and Arabia[12]

8            Defendants have already produced the citizen complaints of Ralph Nash and

9    plaintiff.  Citizen complaints are only kept on file five years.  The citizen complaint against

10   Arabia no longer exists because it is more than five years old.  In regard to Dudley, there were

11   two citizen complaints which should have been destroyed because they are more than five years

12   old, but which have not been.  They are dated September, 2002 and January 31, 2003.

13           Plaintiff's request is granted only insofar as the complaints pertain to improper

14   searches.

15   CONCLUSION

16           For the reasons stated in this opinion, IT IS ORDERED that:

17           1.  Plaintiff's motion to compel production of documents, filed May 21, 2008, is

18   granted in part and denied in part.[13]

19           2.  Defendants shall produce discovery as specified herein by June 27, 2008.

20   Production may take place pursuant to a stipulated protective order.

21   DATED: 06/24/08                                    /s/ Gregory G. Hollows

22                                                     U. S. MAGISTRATE JUDGE

     GGH:076 - Gearhart1444.dsy.wpd

23

24        [12]  Plaintiff originally requested complaints against Hipon and Adams also, but defendants
     responded that there were no such documents.

25

26        [13]  Plaintiff did not file a notice of motion, but only the joint statement.  The filing date is
     taken from that joint statement.